# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KAREN S. PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-06-065-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Karen Parker requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform her past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account her age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 31, 1957, and was 47 years old at the time of the administrative hearing. She has a high school education plus vocational training in bookkeeping, computers, and management seminars. She previously worked as a service manager, retail sales clerk, department sales manager, office manager, bookkeeper, customer service representative, industrial cleaner, dispatcher, retail store manager, and billing clerk. The claimant alleges she has been unable to work since June 3, 2003, because of osteoarthritis of the lumbar spine and hands, cervical degenerative disc disease, fibromyalgia, rheumatoid arthritis, migraine headaches, myofascial pain, missing right eye, colitis, hepatitis B and C, depression, hypertension, and chronic pain.

## Procedural History

On June 19, 2003, the claimant protectively filed an application for disability benefits under Title II (42 U.S.C. § 401 *et seq.*) and an application for supplemental security income payments under Title XVI (42 U.S.C. § 1381 *et seq.*). The applications were denied. After a hearing on July 13, 2005, ALJ Jennie McLean found the claimant was not disabled in a decision dated September 21, 2005. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She found the claimant had the residual functional capacity ("RFC") to perform sedentary work with the nonexertional limitation of no vision in the right eye. The ALJ concluded that the claimant could return to her past relevant work as a department sales manager, office manager, bookkeeper, dispatcher, and billing clerk (Tr. 23).

## Review

The claimant contends that the ALJ erred: (i) by making an RFC determination that was not supported by substantial evidence; (ii) by improperly analyzing her credibility; and, (iii) by failing to properly analyze her mental impairments. The Court finds the claimant's second contention persuasive.

The record reveals that the claimant had severe impairments of fibromyalgia, a missing right eye, hepatitis B and C, and osteoarthritis of the lumbar spine, knee, and hands (Tr. 19, 359-60). She also had problems with irritable bowel syndrome, depression, tension headaches, and panic attacks (Tr. 359-60). At the administrative hearing, the claimant testified that she was fired from her last job as a sales and service manager because she ran out of leave time from being absent frequently and was unable to perform the walking required by the job (Tr. 357-58). Since she stopped working in June 2003, the claimant only left her house for doctor's visits, trips to the pharmacy, and occasional trips to the grocery store (Tr. 355). Dr. J.R. Turrentine, D.O. had been her treating physician for over 20 years (Tr. 355-56), and she also saw a physician for pain management. She experienced pain in

her ankles and knees and could not go up or down the steps to her house without the use of handrails (Tr. 360). She had pain in her back and shoulder blade and her neck was always stiff making it difficult for her to turn her head right to left and look up or down (Tr. 361). She was taking Lortab and Oxycontin and receiving epidural steroid injections (Tr. 359). Side effects from her medications included nausea and confusion. She took her medication in the morning and applied heat and ice to loosen up. When her medication took effect she had about a two-hour window when she could make her bed and do laundry and then she would have to apply heat and ice throughout the day for pain (Tr. 362). The claimant testified that out of an eight-hour workday, she was active about 20-30 minutes at a time and then would have to apply the heating pad or ice packs for approximately 30-45 minutes before she could get up again. Sometimes, the claimant would not be able to return to any activity for the remainder of the day (Tr. 363-64). She did not sleep well because of pain, usually applied the heating pad or ice packs at least three times per night (Tr. 364), and needed help with some issues of personal hygiene (Tr. 365). The claimant had given up fishing and gardening because of her pain (Tr. 365-66). She could sit upright in a chair comfortably for 15 to 20 minutes, stand for ten minutes without moving about, walk half a city block, and could no longer lift the coffee pot or a gallon of milk with one hand (Tr. 366-67). The claimant testified she was embarrassed to be around people because of her eye and other problems and suffered panic attacks and heart palpitations. Her frequency of panic attacks was daily and they lasted about 15 minutes (Tr. 367-68).

The ALJ determined that the claimant had demonstrated medically determinable impairments that "could reasonably cause the pain and symptoms alleged[,]" but concluded that her subjective complaints were not credible because they were not "substantiated by the medical evidence of record to be of such intensity, frequency, and duration to prevent the performance of work activity at the [sedentary] level." (Tr. 22). In reaching this conclusion, the ALJ specifically discussed: (i) medical evidence related to the claimant's complaint's of chronic pain; (ii) the claimant's prescription pain medication and other treatments; and, (iii) the claimant's activities of daily living.

Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d at 801. Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987). But credibility findings should be closely and affirmatively linked to the evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4. Here, the reasons given by the ALJ for finding that the claimant's subjective complaints of pain were not credible were not fully supported by the evidence.

First, the ALJ's discussion pertaining to the claimant's chronic pain was incomplete. The ALJ noted a number of normal findings, *e. g.*, the claimant's motor strength, sensation, reflexes, cerebellar functioning such as rapid alternating and fine motor movements, and ranges of motion were all normal; her joints showed no inflammation; X rays revealed some osteoarthritis but nothing extensive; her hand X rays were normal; and, an MRI of the lumbar spine revealed mild spondylosis with early facet joint arthropathy but no neurological involvement (Tr. 22). But the ALJ clearly ignored objective medical findings that supported the claimant's subjective complaints of pain, *e. g.*, the claimant was noted to be suffering from cervical spasms, lumbar tenderness, bilateral hip tenderness, and crepitus in the knees (Tr. 159-60, 169); her Tinel's testing of the elbows was positive (worse on the right), the tibial plateau in both knees was prominent, and bony thickening suggested the presence of osteoarthritis in the hands (Tr. 169-70); she received several lumbar epidural injections and tender point injections for her neck and shoulders; and, on more than one occasion, she was noted to have multiple cervical trigger points and her straight leg raising test was positive bilaterally (Tr. 272, 282, 301). This evidence supported the claimant's allegations of pain, and the ALJ erred by failing to discuss it in her credibility determination. *See, e. g., Clifton v. Chater,* 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (the ALJ must discuss the "significantly probative evidence he chooses to reject."). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (finding that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and

the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.").

Second, the ALJ's discussion of the claimant's medications and other treatments was flawed. For example, the ALJ noted that the claimant took strong narcotic pain medication (which she *assumed* was effective at relieving the claimant's pain), and discussed the claimant's injections, her use of heat and ice and her brief participation in physical therapy. But these factors did not necessarily mean the claimant's complaints of pain were not credible. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1221-22 (10th Cir. 2004) ("While medication and therapy may have been effective in alleviating some of Mr. Hamlin's symptoms, this does not necessarily undermine the credibility of his pain allegations."). Indeed, the claimant's testimony and other medical evidence indicated that although she had taken Lortab and Oxycontin for a significant period of time, she continued to suffer significant pain (Tr. 159, 169, 201, 211, 243-44, 250, 251, 256, 360-61). *Id*. at 1222 ("Regardless of his medications, Mr. Hamlin testified to constant pain in his shoulders and arms, which increased whenever he used his arms."). Further, the ALJ failed to discuss the side effects of the claimant's medications, *e. g.*, the claimant testified that her pain medications caused nausea and confusion (Tr. 361-62), and she told her doctors that her medications gave her problems with her bowels (Tr. 201, 243, 247). The ALJ should have discussed this evidence if she was going to rely on the claimant's use of pain medication to find that her allegations of pain were not credible. *See Saleem v. Chater*, 86 F.3d 176, 179

(10th Cir. 1996) ("In evaluating . . . pain, . . . the ALJ was required to consider the side effects of Ms. Saleem's use of . . . medication.").

Finally, the ALJ failed to properly analyze the impact of the claimant's daily activities on her credibility determination. The ALJ found the claimant's testimony that much of her day was spent lying down on the couch unbelievable based on the Disability Supplemental Interview Outline, which the claimant completed two years prior to the administrative hearing. The ALJ noted that the claimant reported taking care of her personal needs and grooming; doing light housework, cooking, and laundry; taking care of her dog; driving and shopping biweekly; reading, watching television, quilting, and doing needlework; occasionally visiting friends and relatives; and walking for exercise (Tr. 22, 83-90). But the claimant qualified many of her answers on the questionnaire with explanations that were consistent with her hearing testimony. For example, she reported applying a heating pad and ice pack in the morning and alternating between this and doing household chores such as laundry and making her bed and cooking. She also indicated that she often needed help with these activities even when she could perform them, and that she could no longer perform some activities she had previously enjoyed, *e. g.*, spending time outdoors gardening, fishing, and walking, because of her pain. The claimant further indicated that she needed help even with some of her personal needs (Tr. 83-90). Thus, the claimant's questionnaire was not inconsistent with her hearing testimony, particularly when the passage of time and the worsening of her pain are taken into consideration. *See Pryce-Dawes v. Barnhart*, 166 Fed. Appx. 348, 350 (10th Cir. 2006) ("[O]ur review indicates that the activities in Exhibit 4E

appear generally consistent with her hearing testimony. Whatever conflict the ALJ found is not obvious. Thus, we cannot conclude that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence.") [unpublished opinion]. In this regard, between the time she completed the questionnaire in July 2003 and testified at the hearing in July 2005, the claimant was diagnosed with rheumatoid arthritis (Tr. 199-200) and fibromyalgia (Tr. 245), and she told her doctor that her pain was "worse, if anything" (Tr. 249) and that it was "controlling her life." (Tr. 250). In any event, the ALJ should not have relied on the claimant's ability to perform some household chores as conclusive evidence that she did not suffer from disabling pain. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("[T]he ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'"), *quoting Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987).

Because the ALJ's credibility determination failed to follow the standards set forth in *Kepler* and *Hardman*, her determination as to the claimant's credibility is not supported by substantial evidence. The decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for a proper analysis so the Court can assess "whether relevant evidence adequately supports the ALJ's conclusion." *Clifton*, 79 F.3d at 1009. If on remand the ALJ determines that the claimant's pain results in further functional limitations, she must include those limitations in the RFC and re-determine whether the claimant is disabled.

## Conclusion

For the reasons set forth above, the ruling of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further findings consistent with this Opinion and Order.

**DATED** this 29th day of March, 2007.

 *[signature]*

 **STEVEN P. SHREDER**
 **UNITED STATES MAGISTRATE JUDGE**